NOT FOR PUBLICATION                              (Docket Nos. 14, 22)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

```
_____  :
                                 :
NEW JERSEY PROTECTION AND        :
ADVOCACY, INC.,                  :
                                 :
          Plaintiff,             :   Civil No. 04-5914 (RBK)
                                 :
     v.                          :   OPINION
                                 :
TOWNSHIP OF RIVERSIDE,           :
et al.,                          :
                                 :
          Defendants.            :
_____  :
```

**KUGLER**, United States District Judge:

     This matter comes before the Court upon motion by Plaintiff New Jersey Protection and Advocacy, Inc. ("Plaintiff"), for partial summary judgment of its claim against Defendants Township of Riverside ("Riverside") and County of Burlington ("Burlington," collectively "Defendants"), and motion by Movant United States of America ("Movant") for leave to participate as <u>amicus</u> <u>curiae</u>. For the reasons set forth below, Plaintiff's motion shall be denied without prejudice and Movant's motion shall be denied.

**I.   Background**

     Riverside Township is a municipality in Burlington County, New Jersey, with a population of approximately 8,000 and fewer than fifty people in its employ. Many of Riverside Township's

sidewalks predate January 26, 1992, and many of these sidewalks lack any form of curb ramp, a sloped cut in the curb that permits wheelchair users to access a raised sidewalk. Plaintiff, a federally funded protection and advocacy organization serving individuals with disabilities in New Jersey, estimates that over one hundred intersections are inaccessible due to structural barriers such as the lack of curb ramps or curb ramps that fail to meet accessibility specifications. The inaccessibility of the sidewalks forces wheelchair users to travel in the Township streets. Plaintiff also alleges various other inaccessible facilities in Riverside, including the public library and the Riverside Municipal Building.

Plaintiff brought suit against Riverside on December 1, 2004, claiming that the structural barriers on Riverside sidewalks violate the Americans with Disabilities Act ("ADA") and Section 504 of the Rehabilitation Act of 1973 ("Section 504"). Plaintiff amended its Complaint on October 11, 2005, to add Burlington as a Defendant. On October 20, 2005, Magistrate Judge Ann Marie Donio entered an Order authorizing Plaintiff to file a motion for partial summary judgment on the issue of whether a public entity employing fewer than fifty people is exempt from the requirement of installing curb ramps on existing sidewalks. In compliance, Plaintiff moves for partial summary judgment "seeking an order declaring that Riverside Township is required

to make its system of public sidewalks accessible to individuals with disabilities under the [ADA]." (Pl. Mot., filed Nov. 29, 2005, at 1.) Defendants Riverside Township and Burlington County filed separate briefs in opposition to Plaintiff's motion.[1]

## II. Standard

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Celotex, 477

---

[1] Defendant Burlington concedes that it employs over fifty employees and therefore proffers no opinion as to Plaintiff's motion, which addresses only the issue of whether an entity with fewer than fifty employees bears any obligation to install curb ramps. Burlington nevertheless appears to argue that "there remains a genuine issue of material fact as to whether or not the construction or maintenance of a public sidewalk is a program, service or activity under Title II." (Def. Burlington's Opp'n, filed Dec. 22, 2005, at 5-6.) This assertion is patently incorrect as "the district court's interpretation of a federal regulation is a question of law," and may be appropriately adjudicated in disposition of a motion for summary judgment. Helen L. v. DiDario, 46 F.3d 325, 329 (3d Cir. 1995) (granting summary judgment to Defendant because ADA issue was a question of law)(citing (ADAPT v. Skinner, 881 F.2d 1184, 1191 n.6 (3d Cir. 1989)).

U.S. at 330. The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case. Id. at 331. Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

**III. Analysis**

**A.   Sidewalks as a Service, Program, or Activity**

Plaintiff alleges that Defendants violated Title II of the ADA and Section 504 by failing to make their sidewalks accessible to individuals with disabilities. Defendant Riverside contends that it is exempt from any obligation to initiate curb repairs on any of its sidewalks constructed prior to January 26, 1992, because it employs fewer than fifty persons.[2]

Title II of the ADA obliges public entities to make all services, programs, and activities accessible to persons with disabilities.[3] 42 U.S.C. § 12132. A "public entity" includes "any

---

[2] Count One of Plaintiff's Complaint alleges that Defendants have failed to make accessible curbs altered since January 26, 1992, however, this allegation is outside of the scope of Plaintiff's motion.

[3] More specifically, Title VII provides: "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be

State or local government" as well as "any department, agency, special purpose district, or other instrumentality of a State or States or local government." § 12131(1)(A)-(B). Pursuant to Congress's instruction, the Attorney General promulgates regulations to implement this provision. § 12134(a).

In particular, 28 C.F.R. § 35.150 addresses a public entity's obligations to render accessible facilities built prior to the enactment of the ADA. Under § 35.150, public entities must ensure the accessibility of "each service, program, or activity" through such methods as "redesign of equipment, reassignment of services to accessible buildings, assignment of aides to beneficiaries, home visits, delivery of services at alternate accessible sites, alteration of existing facilities and construction of new facilities." § 35.150(a) and (b). These changes "shall be made within three years of January 26, 1992," and public entities employing "50 or more persons" shall develop "a transition plan setting forth the steps necessary to complete such changes" within six months of January 26, 1992. § 35.150(c) and (d).

---

subjected to discrimination by any such entity." 42 U.S.C. § 12132.
    Section 504 employs similar language, providing: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

Plaintiff argues that Defendants are obliged to install curb ramps because sidewalks constitute a service, program, or activity under the ADA and a program or activity under Section 504. This argument is supported by the opinion of the Ninth Circuit, the sole Circuit to address this issue. Barden v. Sacramento, 292 F.3d 1073 (9th Cir. 2002).

The Ninth Circuit's conclusion notwithstanding, both the regulations and the Third Circuit explicitly refer to walks and roadways as "facilities," rather than activities, programs, or services. See 28 C.F.R. § 35.104 (defining "facility" as "all or any portion of buildings, structures, . . . roads, walks, passageways, parking lots, or other real or personal property"); Kinney v. Yerusalim, 9 F.3d 1067, 1069 n.3 (3d Cir. 1993) (noting that streets and walkways are "facilities" given particular priority in the regulations).

The distinction between a facility and a program, service, or activity is significant, as it dictates the public entity's obligation to ensure accessibility: while entities may not exclude "qualified individual with disabilities from participation in or benefits of services, programs, or activities," the regulations do not "[n]ecessarily require a public entity to make each of its existing facilities accessible to and usable by individuals with disabilities." § 35.150(a) and (a)(3).

6

To conclude that sidewalks constitute a program, service, or activity the Ninth Circuit reasoned that "maintaining public sidewalks is a normal function of a city," and therefore must be a program, service, or activity, requiring complete accessibility. Barden, 292 F.3d at 1076. However, such an analysis ignores the distinction between a city's responsibility to maintain sidewalks and the enterprises ordinarily deemed programs, services, and activities, such as the Pennsylvania Department of Correction's motivational boot camp, Yeskey v. Commonwealth of Pa. Dept. of Corrections, 118 F.3d 168, 169 (3d. Cir. 1997), investigative questioning at police stations, Calloway v. Borough of Glassboro Dept. of Police, 89 F. Supp. 2d 543 (D.N.J. 2000), and medical licensing, zoning, and parole hearings, Barden, 292 F.3d at 1076 (citations omitted). The ADA and Section 504 mandate accessibility of such functions, prohibiting the exclusion of people with disabilities.

In the context of maintaining sidewalks, however, the issue is not the exclusion of individuals from the activity of maintaining sidewalks, but rather the failure to maintain the sidewalks in a certain way. Moreover, the fact that the entity provides the service of maintaining a city facility does not itself necessitate the accessibility of that facility; such a reading would render superfluous the exception provided in 28 C.F.R. § 35.150(a)(1) that relieves entities of any obligation to

make every facility accessible.[4] Accordingly, this Court deigns to find that sidewalks are, in and of themselves, programs, services, or activities for the purpose of the ADA's implementing regulations.

In any event, as provided in detail below, the relevant regulations compel installation of curb ramps in preexisting sidewalks in most instances, regardless of whether the sidewalks constitute a facility, or a program, service, or activity. See § 35.150(d)(2).

**B.   Obligation of Entity with Fewer Than Fifty Employees**

Curbs and sidewalks receive special treatment in the regulations and legislative history underlying the ADA. As Congress noted, the "employment, transportation, and public accommodation sections of [the ADA] would be meaningless if people who use wheelchairs were not afforded the opportunity to travel on and between the streets." H. Rep. No. 101-485 (1990), pt. 2, at 84, U.S. Code Cong. & Admin. News at 303, 367. As the

---

[4] The conclusion that sidewalks are not themselves services, programs, or activities for the purpose of the ADA is further bolstered by the regulations, which require provision of a schedule for installing curb ramps, "giving priority to walkways serving entities covered by the Act, including State and local government offices and facilities, transportation, places of public accommodation, and employers, followed by walkways serving other areas." § 35.150(d)(2). This language suggests that the sidewalks themselves are not entities covered by the Act (which include a public entities' services, programs, or activities), but rather that sidewalks may *serve* such entities.

8

Third Circuit observed, "lack of curb cuts is a primary obstacle to the smooth integration of those with disabilities into the commerce of daily life," leaving "people using wheelchairs [with] the Hobson's choice between travelling in the streets—with cars and buses and trucks and bicycles—and travelling over uncut curbs which, even when possible, may result in the wheelchair becoming stuck or overturning, with injury to both passenger and chair." Kinney v. Yerusalim, 9 F.3d 1067, 1069 (3d Cir. 1993).

In acknowledgment of the challenges facing the mobility impaired, the regulations mandate curb ramps on all "[n]ewly constructed or altered streets, roads, and highways." 28 C.F.R. § 35.151(e). The regulations also give "priority" to placement of curb ramps in existing facilities, Kinney, 9 F.3d at 1071, explicitly requiring public entities with fifty employees or more to develop transition plans. The regulations provide that these transition plans are to include "a schedule for providing curb ramps," which should "give priority to walkways serving entities covered by the Act . . . followed by walkways serving other areas." § 35.150(d)(2).

The crux of Riverside's argument is that it employs fewer than fifty people and is therefore exempt from the transition plan requirement. Because it need not develop a transition plan, Riverside reasons, it is also exempt from the obligation to install curb ramps in sidewalks that predate the ADA.

Such a reading of the regulations is tenuous at best. Although § 35.150 explicitly mentions curb ramps only in the context of its discussion of transition plans, it implies a more general obligation to install curb ramps in all sidewalks, even those predating the ADA, and the emphasis on curb ramps in the regulatory scheme suggests that the Department of Justice ("DOJ") considered accessible sidewalks necessary to ensure equal participation in and enjoyment of a public entities' services, programs, or activities, as mandated by 42 U.S.C. § 12132. See, e.g., Kinney v. Yerusalim, 9 F.3d at 1069 ("Without curb cuts, people with ambulatory disabilities simply cannot navigate the city; activities that are commonplace to those who are fully ambulatory become frustrating and dangerous endeavors."). Consequently the failure to explicitly articulate the curb ramp requirement outside the context of the transition plan mandate does not abrogate the DOJ's clear intention to require "curb ramps or other sloped areas where pedestrian walks cross curbs, giving priority to walkways serving entities covered by the Act." § 35.150(d)(2).

Rather, the purpose of the fifty employee exception to the transition plan mandate is to relieve smaller entities from the not insignificant procedural burdens of the transition plan requirement itself. The directive to develop a transition plan encompasses various procedural obligations, including provision

of an opportunity for interested persons to submit comments and otherwise participate in developing the plan, an obligation to make the transition plan available for public inspection, and the drafting of the transition plan document. Exemption from the transition plan provision is relief from these procedural burdens and no more; it in no way implicates an exemption from the obligation to make the physical sidewalks accessible.

Riverside argues further that the DOJ intended the fifty employee minimum to alleviate the potential fiscal and bureaucratic hardship of installing curb ramps. However, such a reading would render the provision redundant, since the regulatory scheme already provides relief from its obligations where a public entity can show that compliance "would result in undue financial and administrative burdens." § 35.150(a)(3). Consequently, no purpose would be served by adopting Riverside's tortured interpretation of the transition plan provisions.

Accordingly, this Court cannot conclude that entities with fewer than fifty employees are exempt from any obligation to install curb ramps in sidewalks that have not been altered or newly constructed. However, Plaintiff has not established "the nonexistence of a 'genuine issue'" such that it would be entitled to summary judgment, <u>Celotex</u>, 477 U.S. at 330, and Plaintiff has certainly not established its entitlement to an "order declaring that Riverside Township is required to make its system of public

sidewalks accessible to individuals with disabilities." (Pl. Mot., filed Nov. 29, 2005, at 1.)

Rather, Riverside may be exempt from any obligation to install curb ramps if such an action "would result in an undue financial and administrative burden." § 35.150(a)(3). For the purposes of the present motion, however, the assessment of hardships associated with installing ramps would be premature: Discovery is stayed pending resolution of this motion, and Defendant and Plaintiff agree that "Riverside's undue financial burden claim is not appropriate for consideration at this time." (Pl. Reply at 3.) Accordingly, Plaintiff has not established that Riverside is under any obligation to install ramps on all of its curbs, and Plaintiff's motion for summary judgment is therefore denied.

**IV. Movant United States of America's Motion for Leave to Appear Amicus Curiae**

District Courts may permit third parties to appear in court as amicus curiae where they "can contribute to the court's understanding of the" issues being presented before the court. Harris v. Pernsley, 820 F.2d 592, 603 (3d Cir. 1987). Proceeding amicus is a "privilege" that "rests in the discretion of the court which may grant or refuse leave according as it deems the proffered information timely, useful, or otherwise." Community Ass'n for Restoration of Env't (CARE) v. DeRuyter Bros. Dairy, 54 F. Supp. 2d 974, 975 (E.D. Wash. 1999) (citing Hoptowit v.

12

Ray, 682 F.2d 1237, 1260 (9th Cir. 1982)); DeJulio v. Georgia, 127 F. Supp. 2d 1274, 1284 (N.D. Ga. 2001) (noting that there exists no parallel provision to Federal Rule of Appellate Procedure 29, to regulate admission of amicus briefs in district court, and therefore leave to file is entirely discretionary).

The purpose of amicus appearances "is to assist the Court in reaching the right decision in a case affected with the interest of the general public." Russell v. Board of Plumbing Exam'rs, 74 F. Supp. 2d 349, 351 (S.D.N.Y. 1999); Liberty Res., Inc., 395 F. Supp. 2d 206, 209-10 (E.D. Pa. 2005) ("Courts have found the participation of an amicus especially proper where the amicus will ensure 'complete and plenary presentation of difficult issues so that the court may reach a proper decision.'") (quoting Alliance of Auto. Mfrs. v. Gwadowsky, 297 F. Supp. 2d 305, 307 (D. Me. 2003)). Consequently, persons are typically permitted to proceed amicus where "(1) the petitioner has a 'special interest' in the particular case; (2) the petitioner's interest is not represented competently or at all in the case; (3) the proffered information is timely and useful; and (4) the petitioner is not partial to a particular outcome in the case." Liberty Res., Inc. v. Philadelphia Hous. Auth., 395 F. Supp. 2d 206, 209 (E.D. Pa. 2005) (citing Sciotto v. Marple Newtown Sch. Dist., 70 F. Supp. 2d 553, 555 (E.D. Pa. 1999)).

Movant here contends that its views will be of assistance to

the Court, since the DOJ has expertise in its own regulations and is entitled to deference with regard to its interpretation of its regulations. (Movant Mot. filed Dec. 29, 2005, at 3-4.) Movant argues further that it has an interest in the litigation because of its "important regulatory and enforcement responsibilities" that may be impacted by the outcome of Plaintiff's motion. (Movant Mot. filed Dec. 29, 2005, at 2-3.)

In this instance, both parties are represented by competent counsel, which have coherently presented the arguments for each side. Movant's brief merely rehashes the issues already addressed by Plaintiff. Moreover, as provided in detail above, this Court found, as Movant argues, that the fifty employee prerequisite for the transition plan requirement does not obviate or otherwise affect Defendants' obligation to install curb ramps. Movant does not address the sole issue remaining—whether installation of curb ramps would constitute an undue burden on Defendants. Accordingly, Movant's <u>amicus</u> <u>brief</u> would have no affect on the outcome of the present motion and its motion for leave to file is therefore moot.

The accompanying Order shall issue today.

Dated: 8/2/06          S/Robert B. Kugler
                       ROBERT B. KUGLER
                       United States District Judge

14